# EXHIBIT "D"

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JOE ANGEL GOMEZ, Individually and As Next Friend of J.L.G. and J.A.G., minors and As Representative of the Estate of LINDA OLIVAREZ, deceased, and ANTONIA OLIVAREZ, Individually and As Next Friend of F.F. and J.O., minors, and GILBERT OLIVAREZ, Individually, and Each as Heir to LINDA OLIVAREZ<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY, KEY SAFETY RESTRAINT SYSTEMS, INC., a/k/a KEY SAFETY SYSTEMS, INC. and f/k/a BREED TECHNOLOGIES, INC.,<br><br>Defendants. | §§§§§§§§§§§§§§§§§§§<br><br>Case No. 5:15-cv-00866-DAE |

## DECLARATION OF MICHAEL LEIGH

I, Michael Leigh, declare as follows:

1. My name is Michael Leigh. I am over the age of 18, have personal knowledge of the matters set forth in this Declaration unless otherwise stated, and if called as a witness, I would be competent to testify to the matters in this Declaration. The facts stated in this Declaration are true and correct.

2. I am employed by Ford Motor Company ("Ford") and have been since July of 1994. My current position is a research engineer in Ford's Automotive Safety Office.

3. In this Declaration, I discuss certain proprietary, trade secret, and confidential information of Ford. In executing this Declaration, I do not intend to, and Ford has not authorized me to, waive any privileges Ford may have as to proprietary, trade secret, and/or

confidential information, or as to attorney-client communications or information developed in anticipation of or in response to this litigation,

4.  I have a Bachelor of Science degree in Mechanical Engineering awarded December of 1989 from Wright State University. After graduation, I worked for four (4) and a half years at Transportation Research Center in Ohio, an engineering services company that performed automotive testing for the National Highway Traffic Safety Administration ("NHTSA") pursuant to a contract with NHTSA. I personally worked on that contract performing Federal Motor Vehicle Safety Standard ("FMVSS") 216, "roof crush resistance" research and testing for NHTSA. When I went to work for Ford in July 1994, I worked initially in the Product Development Vehicle Crash Safety department. I worked with Ford body structure engineers regularly so that I obtained a good understanding of the body engineering process at Ford, and I participated in various crash safety testing activities. In August 2000, I moved to the Automotive Safety Office, where since that time I have been the individual with Ford's Automotive Safety Office responsible for coordinating Ford's interactions with NHTSA on issues involving certain regulations, including the roof crush resistance standard, FMVSS 216, and occupant protection in rollover events. In addition, in 2003, I received a Master of Science Degree in Engineering Management from Wayne State University.

5.  As part of my job duties, I interact with NHTSA when it requests information from Ford on certain regulatory issues, including issues relating to FMVSS 216 on roof strength for certain passenger vehicles and occupant protection in rollover events, and I interact with Ford engineering employees to obtain and to provide certain engineering information when necessary in order for Ford to adequately communicate to NHTSA on such issues.

6.  I am providing this Declaration to establish the proprietary and trade secret nature

of certain Ford information and documentation that I have helped assemble. I am familiar with the nature of this information, its source, and the way that Ford handles the information.

7. The specific information I am describing in this Declaration has been collected and is indexed on a list marked "Non-Sharing Proprietary Information," which is included with Ford's indices to its Roof Crush Collection of documents as produced by Ford in discovery in litigation. I have reviewed these documents and I am familiar with their contents.

8. The roof documents identified in paragraph 7 of this Declaration consist of documents regarding potential future designs for passenger vehicle roof structures, including design concepts, cycle plans, timetables, and confidential manufacturing technology. Documentation regarding potential future designs for passenger vehicle roof structures, including design concepts, cycle plans, timetables, and confidential manufacturing technology are considered trade secrets of Ford. In other words, such information is used in Ford's business of designing and manufacturing passenger vehicles and provides Ford with an opportunity to gain an advantage in that market over anyone who does not have such information.

9. Research leading to documentation regarding potential future designs for passenger vehicle roof structures, including design concepts, cycle plans, timetables, and confidential manufacturing technology, of the type described in the roof documents, is undertaken at great expense to Ford. The automotive industry is a highly competitive industry and being the first to market a new concept or feature can confer a distinct competitive advantage to an automotive manufacturer, translatable into sales and profits. Research on product concepts may take several years, and the design and development of a new design concept generally takes several years.

10. For example, documentation regarding the cycle plans for potential future designs

for passenger vehicle roof structures contains detailed information about the estimated timing of potential new vehicle designs. Literally millions of dollars are spent by major auto manufacturers on new designs, and significant trade secret information that may determine whether or not those millions of dollars will have been spent on a money-making or losing venture exists in the cycle plans.

11. If Ford's competitors were to gain access to this documentation regarding potential future designs for passenger vehicle roof structures, they would unfairly gain a competitive advantage against Ford. Such an advantage would consist of using Ford's work to use in the development of their own designs and thus to get a product to market sooner than they would have otherwise and/or to get their product to market at a lower cost, since they would not have incurred the substantial research, testing and developmental costs that Ford had incurred, and since they would have received closely guarded information about Ford's costs and timetables for such designs. Alternatively, whether or not a competitor actually incorporated Ford's potential design into its own products, possessing information about Ford's potential future design concepts (whether in comparison or contrast), and/or to undercutting Ford's timetables or costs by working from Ford's information regarding same and/or to developing marketing strategies that would contrast the competitor's own design concepts with Ford's based upon this information.

12. Based upon my background and experience, I am familiar with the information publicly available in the area of future possible vehicle designs such as those referenced in the documents, and the information contained in the documents is not known outside of Ford. Information on future vehicle design concepts, including those for roof structures, are treated as trade secrets in the automotive industry and are kept as closely guarded secrets. Ford Motor

Company has at all times maintained the confidentiality of the information in these documents.

13. For instance, as a part of my job duties with Ford I have been responsible for interacting with Ford engineering employees to gather and produce certain information regarding roof design issues to NHTSA in connection with a notice of rulemaking regarding a proposed new rule for roof strength criteria in certain passenger vehicles, known as a potential revision to FMVSS 216, announced in August 2005. As part of its rulemaking proposal with respect to FMVSS 216, NHTSA called for public comment. Ford indicated to NHTSA that while it would certainly make comments as part of the public record, it would also like to share additional information that was confidential and proprietary with the appropriate persons at NHTSA, if such documentation could be accorded confidential and proprietary treatment. Ford then made an oral and visual presentation to NHTSA, including information that was designated by Ford as confidential and proprietary by all attendees of the presentation. Ford tendered a request that the documentation itself be treated as confidential as provided for by NHTSA regulations, under federal law, and tendered the documents to NHTSA. NHTSA specifically agreed to accord these proprietary documents confidential treatment, and it was only pursuant to that process that these documents were disclosed outside of Ford, and then only to the appropriate persons involved in the FMVSS 216 rulemaking process at NHTSA.

12. As described above, pursuant to applicable federal regulations, Ford requested that NHTSA treat these proprietary and trade secret documents as confidential. Attached as Exhibit 1 to my Declaration is a true and correct copy of Ford's request to NHTSA that the documents be given confidential treatment within NHTSA. Attached as Exhibit 2 to my Declaration is a true and correct copy of documentation by which NHTSA agreed that the documents would be considered proprietary and confidential and would be treated as such by NHTSA indefinitely.

13. I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this 31st day of August, 2016, at Dearborn, Michigan.

*Michael Leigh*
Michael Leigh

# EXHIBIT "D-1"



U.S. Department
of Transportation
**National Highway
Traffic Safety
Administration**

AUG 2 3 2006

400 Seventh St., S.W.
Washington, D.C. 20590

James P. Vondale
Director
Ford Motor Company
330 Town Center Drive
Suite 400
Dearborn, Michigan 48126

Re: Confidentiality Determination/November 22, 2006 Presentation – FMVSS 216 NPRM (Docket No. NHTSA 2005-22143)

Dear Mr. Vondale:

This responds to your August 9, 2006, letter requesting confidential treatment for materials submitted by the Ford Motor Company (Ford). Ford submitted these materials in a presentation with National Highway Traffic Safety Administration (NHTSA) personnel regarding the FMVSS 216 Notice of Proposed Rulemaking (NPRM). You request confidential treatment for a period of 10 years.

Your letter and accompanying certificate indicate that the information provided is confidential and proprietary data that has never been released or become available outside Ford.

I have decided to grant your request.

Ford provided this information voluntarily and was not required to submit this information under 49 U.S.C. § 30166 or other authority. Accordingly, I have reviewed your request under the principles set forth in *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871 (D.C. Cir. 1992).

Under the test set forth in *Critical Mass*, financial or commercial information provided to the government on a voluntary basis is "confidential" for purposes of Exemption 4 of the Freedom of Information Act if it is the kind of information that would customarily not be released to the public by the submitter. Your certificate indicates that the data contained in your response is data that Ford has never released or become available outside Ford, except as described in the certification. I am according confidential treatment to the information contained in your submission.

Subject to the conditions below, this grant of confidential treatment will remain in effect indefinitely.




VEHICLE SAFETY HOTLINE
888-327-4236

GRCC 35318

SUBJECT TO NON-SHARING PROTECTIVE ORDER

2

This grant of confidential treatment is subject to certain conditions. The information may be disclosed under 49 CFR § 512.22 based upon newly discovered or changed facts, and you must inform the agency of any changed circumstances that may affect the protection of the information (49 CFR § 512.10). If necessary, you will be notified prior to the release of any information under the procedures established by our regulations (49 CFR § 512.22(b)).

Sincerely,

Otto G. Matheke, III
Senior Attorney

GRCC 35319

SUBJECT TO NON-SHARING PROTECTIVE ORDER

# EXHIBIT "D-2"



**James P. Vondale, Director**
Automotive Safety Office
Environmental & Safety Engineering

Fairlane Plaza South
330 Town Center Drive
Dearborn, MI 48126-2738 USA

August 9, 2006

Otto Matheke, Esq.
Office of Chief Counsel
National Highway Traffic Safety Administration
400 Seventh Street, S.W.
Washington, DC 20590

Subject: Ford Motor Company presentation to NHTSA personnel during a meeting on November 22, 2005 regarding the FMVSS 216 NPRM
(Docket No. NHTSA-2005-22143)

Dear Mr. Matheke:

Attached are two copies of Ford Motor Company's presentation, regarding the FMVSS 216 NPRM, that was made to NHTSA personnel during a meeting on November 22, 2005. Ford Motor Company deems portions of this presentation as confidential material. Also attached are two copies of the redacted version of the presentation.

Ford Motor Company submitted the redacted version to the FMVSS 216 NPRM docket and it has been posted under number NHTSA-2005-22143-233, dated August 3, 2006.

This letter provides support for Ford Motor Company's claim of confidentiality in accordance with 49 C.F.R. Part 512.8.

Ford Motor Company requests confidential treatment for certain information included in these documents which contain confidential commercial information exempt from disclosure pursuant to 49 C.F.R. § 512.15, 5 U.S.C. § 552(B)(4), and 49 U.S.C. § 30167.

Ford Motor Company requests confidential treatment of the information that has been identified in accordance with 49 CFR 512.6, because public disclosure of this information would likely result in substantial competitive harm to Ford Motor Company because it could reveal the strategies by which Ford Motor Company rolls out new technological advancements. Documents of this type, with the information identified as confidential, typically would not be disseminated outside Ford Motor Company.

GRCC 35320

SUBJECT TO NON-SHARING PROTECTIVE ORDER

Mr. Otto Matheke                 -2-                 August 9, 2006

Documents of the type in Appendix A are maintained under a record keeping system which is intended to control dissemination of this material within Ford Motor Company, and to assure that the material is not disseminated outside of Ford Motor Company, except as described in the attached certification, which is made pursuant to 49 C.F.R. Part 512.4(b). Neither NHTSA nor other Federal agencies nor Federal courts have made determinations relating to the confidentiality of the submitted information or similar information, to the best of our knowledge.

Ford Motor Company requests that the information identified in accordance with 49 C.F.R. Part 512.6 be granted confidential treatment by the agency for a period of ten years. Earlier disclosure of this information, in Ford Motor Company's opinion, would result in substantial competitive harm.

In the event that the agency should conclude that all or part of the submitted information is not to be given confidential treatment, Ford Motor Company asks the agency to provide reasonable notice of not less than ten working days prior to any contemplated disclosure in order that Ford may pursue such legal remedies as it may choose. Please direct all written notices to me at Ford Motor Company, 330 Town Center Drive, Suite 400, Dearborn, Michigan 48126. Please direct all non-written communication to Paul L. Fabien, Esq. who may be contacted by telephone at (313) 621-1656.

Sincerely,

*[signature]*

James P. Vondale

Attachments

GRCC 35321

SUBJECT TO NON-SHARING PROTECTIVE ORDER

## CERTIFICATE IN SUPPORT OF REQUEST FOR CONFIDENTIALITY

I, Todd M. Fronckowiak, pursuant to the provisions of 49 CFR 512, state as follows:

(1) I am Manager, Advanced Safety and Rulemaking, in the Automotive Safety Office, and I am authorized by Ford Motor Company to execute documents on its behalf;

(2) The information designated as confidential and contained in Ford Motor Company's submission of our presentation regarding the FMVSS 216 NPRM made to NHTSA personnel on November 22, 2005, is confidential and proprietary data and is being submitted with the claim that it is entitled to confidential treatment under 5 U. S. C. § 552 (b) (4);

(3) A member of my staff has personally inquired of the responsible Ford Motor Company personnel who have authority in the normal course of business to release the information for which a claim of confidentiality has been made to ascertain whether such information has ever been released outside Ford Motor Company;

(4) Based upon such inquiries, to the best of my knowledge, information and belief, the information for which Ford Motor Company has claimed confidential treatment has never been released or become available outside Ford Motor Company.

(5) I make no representation beyond those contained in this certificate and in particular, I make no representations as to whether this information may become available outside Ford Motor Company because of unauthorized or inadvertent disclosure, except as stated in Paragraph 4; and

(6) I certify under penalty of perjury that the foregoing is true and correct. Executed on this 9$^h$ day of August 2006.

*[signature]*
Todd M. Fronckowiak

GRCC 35322

SUBJECT TO NON-SHARING PROTECTIVE ORDER