IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

Joe Angel Gomez, *individually and as next friend of* J.L.G. *and* J.A.G., *minors and as representative of the* Estate of Linda Olivarez, *deceased, and* Antonia Olivarez, *individually and as next friend of* F.F. *and* J.O., *minors, and* Gilbert Olivarez, *individually and each as heir to* Linda Olivarez, §§§§§§§§§

Plaintiffs,

Case Number: 5:15-cv-00866-DAE

v.

Ford Motor Company, Key Safety Restraint Systems, Inc., *a/k/a* Key Safety Systems, Inc., *and f/k/a* Breed Technologies, Inc.,

Defendants.

### DEFENDANT FORD MOTOR COMPANY'S REPLY IN SUPPORT OF ITS OBJECTION TO THE ENTRY OF THE *VETRANO* ORDER PROPOSED BY PLAINTIFFS AND MOTION FOR ENTRY OF PROTECTIVE ORDER TO GOVERN PRODUCTION OF PROPRIETARY, TRADE SECRET AND COMMERCIALLY SENSITIVE MATERIALS

COMES NOW Defendant Ford Motor Company ("Ford"), by and through counsel, and files its Reply in Support of its Objection to the Entry of the *Vetrano* Protective Order and its Motion for Entry of Protective Order to Govern Production of Proprietary, Trade Secret and Commercially Sensitive Materials. In further support thereof, Ford respectfully shows unto the Court as follows:

### INTRODUCTION

Plaintiffs correctly assert that Ford attempted to negotiate a protective order from January 2016 to the present. During this time, Ford offered Plaintiffs three separate protective order options to govern production and dissemination of Ford's proprietary, trade secret, and

commercially sensitive documents and information in this matter. Contrary to Plaintiffs' assertions, two of Ford's proposals *contained a sharing provision* but also reserved Ford's right to designate certain highly commercially sensitive documents subject to non-sharing protection. Plaintiffs refused to accept either of these *sharing/non-sharing proposals*, which necessitated Ford seeking entry of a slightly modified version of this Court's standard protective order. Ford maintains that Plaintiffs never responded with any viable option to Ford's first two proposals because in both instances Plaintiffs summarily rejected the concept that non-sharing protection must be accorded to a portion of Ford's production documents and information.

With no other viable option, Ford proposed a slightly modified version of the Western District's Standard Protective Order, which Plaintiffs refer to in their briefing as the "stock" protective order. Plaintiffs admit that they ceased negotiations with Ford at this point. *See* Dkt. No. 33 at 2; Dkt. No. 42 at 2. Instead, without conferring with Ford, Plaintiffs asked the court to enter an order that was allegedly agreed to by Defendant Key Safety Systems, Inc. ("KSS") in the Connecticut state court matter of *Vetrano v. Key Safety Systems, Inc., et. al.,* Docket No. FST-CV-12-6012155-S. *See* Dkt. No. 28, Exh. 3. ("*Vetrano* Order"). Notably, the *Vetrano* Order does not provide for the parties to assert non-sharing protection over certain highly commercially sensitive documents and materials, which is absolutely imperative in this case. The *Vetrano* order is a far cry from the standard protective order adopted by the Western District.

Because of the surprise and lack of time to respond to Plaintiffs' *Vetrano* Order proposal, Ford filed an objection to the entry of the *Vetrano* Order, noting that it would more fully brief the issue in a subsequent Motion for Protective Order seeking entry of a reasonable and appropriate order to govern production of Ford's proprietary, trade secret, and commercially sensitive

2

materials. *See* Dkt. No. 29. Had Plaintiffs read Ford's objection, they would have known that Ford's motion for entry of a protective order was forthcoming. Nevertheless, Ford now makes this Reply in Support of its Objection to Entry of the *Vetrano* Order and its Motion for Entry of a Protective Order.

## ARGUMENT

### I. FORD'S PROPOSED PROTECTIVE ORDER COMPORTS WITH THE CURRENT FEDERAL RULES OF CIVIL PROCEDURE AND THE PUBLIC POLICY GOALS OF THE WESTERN DISTRICT OF TEXAS, AND IS SUPPORTED BY GOOD CAUSE.

As a preliminary matter, in their response, Plaintiffs continually and erroneously refer to the outdated standard set forth in the Federal Rules of Civil Procedure as those Rules existed prior to the most recent 2015 amendments. See Dkt. No. 42 at 2. To the contrary, the newly amended rules apply to this case. Ford asks this Honorable Court to focus its attention to the current standard set forth in the rules, which defines the scope of discovery to that which is relevant and proportional to the needs of the case. To wit, as amended, Rule 26(b)(1) states, in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Also of significance in this case is the rule governing the issuance of protective orders, which provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause,

> issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.

Fed. R. Civ. P. 26(c)(1)(G).

Further, Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). In particular, Rule 26(c)(1)(G) broadly protects not only trade secrets but also an array of other confidential information. Courts consistently allow for the issuance of a non-sharing protective order for trade secret, proprietary, or confidential information upon a showing of good cause and, in most federal circuit courts, a showing by the requesting party of a clearly defined and very serious injury. *See, e.g., Anderson v. Cryovac*, 805 F.2d 1, 7 (1st Cir. 1986) (allowing non-sharing protective order for good cause shown); *Bridge C.A.T. Scan Ass'n v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d Cir. 1983) (same); *Publicker Indus. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (good cause is established by demonstrating "a clearly defined and serious injury on the moving party"); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (requiring showing of good cause and specific prejudice or harm if no order is granted); *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989) (party seeking protective order has burden of showing good cause); *U.S. ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21, 28 (D.D.C. 2002) (same).

Here, a protective order is warranted as shown by Ford's briefing and supporting declarations, and Plaintiffs do not challenge the confidential designation of any specific Ford produced document. However, they are unwilling to consider a non-sharing provision, which is absolutely imperative in this matter. In summarily rejecting a non-sharing provision, Plaintiffs heavily rely on the notion that information obtained during discovery should be available to the

4

public. *See* Dkt. No. 33 at 2-3; Dkt. No. 42 at 3. To support this contention, Plaintiffs cite several antiquated cases. Further, Plaintiffs use broad, sweeping statements that mischaracterize the law in these cases. For example, while Plaintiffs cite *Nixon v. Warner* for the contention that "access to case records and files should only be denied when such access has become a vehicle for some improper purpose" (Dkt. No. 42 at 3), *Nixon* actually states that "the right to inspect and copy judicial records is not absolute. . . . Courts have refused to permit their files to serve as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner*, 435 U.S. 589, 598 (1978).

In light of these misstatements, Ford would direct this Court's attention to more recent precedent, which is clear that "while the public has a presumptive right to access discovery materials that are filed with the court, . . . the same is not true of materials produced during discovery but not filed with the court." *Bond v. Uteras*, 585 F.3d 1061, 1073 (7th Cir. 2009). Under modern law, "the public has no constitutional, statutory (rule-based), or common-law right of access to unfiled discovery." *Id.; see also Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.") (*quoting Rhinehart*, 467 U.S. at 33). Ford's protected documents will not generally be filed in the Court record unless the filing party adheres to the protective order ultimately entered by the Court, therefore they are not subject to any presumption of openness that is ordinarily afforded a Court record.

### A. Ford's Proposed Protective Order, Which Incorporates Much of This Court's Standard Protective Order Language, Does Not Undermine Public Safety.

Ford proposes the Western District's Standard Protective Order with slight modifications, and this proposal does not undermine public safety. In summarily rejecting this proposal, Plaintiffs essentially attack this Court's standard protective order on various policy grounds,

including its effect on public safety. Plaintiffs' arguments overlook the fact that the Western District found its standard protective order to be appropriate, and consistently applied this order in cases involving discovery disputes. *See Fifield v. Schindler Enters.*, No. SA-14-CA-574-FB, 2015 WL 11661758, at *4 (W.D. Tex. May 28, 2015); *Bowers v. Sears, Roebuck & Co.*, No. A-13-CV-348-AWA, 2014 WL 4269090, at *3 (W.D. Tex. Aug. 29, 2014); *Celtic Bank Corp. v. Jacobs*, No. A-13-CA-040-SS, 2013 WL 5918156, at *3 (W.D. Tex. Oct. 31, 2013); *Simonelli v. Fitzgerald*, No. SA-07-CV-360-XR, 2007 WL 1889610, at *4-5 (W.D. Tex. July 2, 2007). Therefore, Plaintiffs' contention that Ford's proposed protective order undermines public safety necessarily asserts that the Western District as a whole is undermining public safety. The fact that the Western District's standard protective order was used on multiple occasions without apparently causing any overriding negative impact on public safety renders Plaintiffs' allegations without merit.

Moreover, in comparing Ford's proposed protective order to "overreaching and unreasonable protective orders" such as what they purport to have governed litigation that lead to the GM ignition switch recall and the Takata airbag issue, Plaintiffs conveniently omit the fact that Ford is neither GM nor Takata. In this case, there is no allegation that Ford is hiding or failing to produce responsive documents. Ford merely proposes that a small number of the documents produced be subject to the non-sharing protection allowed by this Court. The remainder of Ford's production can be subject to sharing protection or no protection at all if a sharing provision is included in the ultimate order governing production. In other words, the majority of the documents produced by Ford do not need to be subject to non-sharing protection, which adequately protects against Plaintiffs' concerns about public safety ramifications. Further, even the few documents that fall within the non-sharing provision will be available to Plaintiffs

for use in this case, combatting Plaintiffs' concern that Ford will be "allowed to shield the truth from plaintiffs [and] their attorneys." *See* Dkt. No. 33 at 3. Ford wishes to preserve some documents as non-sharing not to prevent Plaintiffs from acquiring information, but rather to protect Ford's commercial interests as expressly allowed by Federal Rule of Civil Procedure 26(c)(1)(G). Therefore, Ford's proposed protective order does not have a negative effect on public safety, on Plaintiffs' interests and is due to be entered in this case.

### B. Ford Demonstrated Good Cause For Non-Sharing Protection.

Plaintiffs' response to Ford's objection to entry of the *Vetrano* Order relies primarily on Plaintiffs' assertion that Ford did not file a Motion for Protective Order, thereby not meeting its burden of demonstrating good cause for entry of a protective order. However, Ford timely filed its Motion for Protective Order on September 1, 2016. This Motion contains the requisite showing of good cause supported by three declarations. *See* Dkt. No. 37 at 10–19. Because Ford filed a Motion for Protective Order demonstrating good cause, Plaintiffs' argument on this point is moot. However, to the extent there is still any question, Ford's Motion answered it.

#### 1. The Information Ford Seeks to Protect Constitutes Proprietary, Trade Secret, and Commercially Sensitive Information that is Protected Under Texas Law.

Plaintiffs do not dispute that the documents Ford seeks to protect under its proposed non-sharing provision constitute proprietary, trade secret, and commercially sensitive information. They do, however, claim that this information is no longer "secret" as required by Texas law. *See* Dkt. No. 42 at 6. Specifically, they claim that because some of this information could be discovered through reverse engineering, the commercially sensitive information is no longer entitled to protection. *Id.* Plaintiffs offer no proof for this argument other than attorney rhetoric. Notwithstanding, under Texas law, information "may be a trade secret even where others can gain knowledge of the process from studying the manufacturer's marketed product." *Phillips v.*

7

*Frey*, 20 F.3d 623, 629 (5th Cir. 1994) (*citing Ventura Mfg. Co. v. Locke*, 454 S.W.2d 431, 433 (Tex. Civ. App. 1970)). Therefore, Plaintiffs' argument is without merit, as Ford's proprietary, trade secret, and commercially sensitive information is still protected under Texas law whether it can be reverse engineered or not.

Texas law also states that one who fails to take reasonable precautions to ensure the secrecy of its commercially sensitive information cannot claim that information is a trade secret entitled to protection. *Phillips*, 20 F.3d at 630-31 (internal citations omitted). In insisting on a non-sharing provision in this case, Ford is simply attempting to meet this obligation and ensure that it's proprietary, trade secret, and commercially sensitive information remains protected in future cases.

### 2. Ford Demonstrated Good Cause By a Particular and Specific Demonstration of Fact.

Pursuant to Federal Rule of Civil Procedure 26(c), a federal court may issue a protective order "for good cause." The movant bears the burden of showing good cause by "a particular and specific demonstration of fact." *United States v. Garnett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978). Although the Fifth Circuit does not explicitly define what constitutes a "particular and specific demonstration of fact" sufficient to support a showing of good cause, it has never required the movant to produce the "itemized list of documents related to the allegedly confidential subject matter" that Plaintiffs request. *See* Dkt. No. 42 at 6. Instead, the Fifth Circuit typically finds a "particular and specific demonstration of fact" lacking in cases where the movant makes only "general and conclusory objections" or does not provide *any* affidavits or other evidence supporting its claims that its information required protection. *See In re Terra Intern, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (conclusory allegations unsupported by any affidavits or other evidence are insufficient); *David v. Signal Intern*, No. 08-1220, 2014 WL

8

2581319 (E.D. La. May 14, 2014); *Anzures v. Prologis Texas I*, 300 F.R.D. 316, 318 (W.D. Tex. 2012) (general objections that the requested documents are personal, confidential, irrelevant, immaterial, and harassing are insufficient to support a showing of good cause).

While Plaintiffs cite cases from various district and state courts, it is important to note that many of these cases are not material to the issue at bar. For instance, some of the cited cases address protective orders that would prohibit discovery of certain documents entirely, as opposed to merely utilizing a non-sharing provision to cover how produced documents are used. *See Ecrix Corp. v. Exabyte Corp.*, 191 F.R.D. 611 (D. Colo. 2000). Others were decided in the 1980s and 1990s where the Federal Rules of Civil Procedure were significantly different and there was a presumption of public access to discovery that no longer exists. *See Parson v. Gen. Motors Corp.*, 85 F.R.D. 724 (D.C. Ga. 1980); *Koval v. Gen. Motors Corp.*, 610 N.E.2d 1199 (Ohio Com. Pl. 1990). Further, the denial of the protective order in *In re Ford Motor Co. Bronco II Products Liability Litigation* was subsequently reversed on reconsideration because disclosure of certain documents would "have a detrimental effect on Ford's ability to settle future personal injury lawsuits." *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, No. CIV. A. MDL 991, 1995 WL 360194, at *3 (E.D. La. June 9, 1995).

In this case, Ford provided three declarations detailing the types of technology Ford seeks to protect and why such protection is necessary. *See* Dkt. No. 37 Exh. B, C, D. This is more than the Fifth Circuit requires to satisfy the "particular and specific demonstration of fact" standard sufficient to support a showing of good cause.

### 3. Plaintiffs Fail to Meet Their Burden to Establish that Sharing of Ford's Commercially Sensitive Information is Relevant and Necessary to This Action.

Once the movant meets its burden of establishing good cause for entry of a protective order, the burden shifts to the party seeking discovery to "establish that the disclosure of trade secrets is relevant and necessary to the action." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 131 F.R.D. 668, 671 (S.D. Tex. 1990); *see also Slide Fire Solutions v. Bump Fire Sys.*, No. 3:14-cv-3358, 2016 WL 3352006, at *2 (N.D. Tex. Feb. 4, 2016) (confirming this interpretation in light of the 2015 amendments to the FRCP). Because Ford met its burden of showing good cause, the burden now lies with Plaintiffs. However, Plaintiffs make no attempt to establish that the disclosure of Ford's commercially sensitive information under sharing protection or no protection, as opposed to the non-sharing protection proposed by Ford, is relevant and necessary *to this action*. Therefore, this Court should grant Ford's Motion for Protective Order and enter the modified standard protective order of the Western District.

## II. FORD'S PROPOSED PROTECTIVE ORDER DOES NOT VIOLATE PUBLIC POLICY OR THE RULES OF ETHICS.

### A. Ford' Proposed Protective Order Does Not Prohibit Information Sharing.

While Plaintiffs heavily rely on the public policy concerns of other circuits, the Fifth Circuit has not spoken directly on its views of the policy implications of information sharing in discovery. However, this Court adopted as its standard order, which is a protective order that allows for non-sharing protection. Therefore, prohibiting information sharing does not violate the public policy of the Western District, and does not violate any stated policy of the Fifth Circuit.

Further, Plaintiffs fail to mention the benefits of limiting information sharing. For example, protective orders encourage testimony in discovery proceedings and promote the settlement of disputes. *See S.E.C. v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001) (*citing*

*F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230, 231 (2d Cir. 1982); *City of Hartford v. Chase*, 942 F.2d 130, 136 (2d Cir. 1991)). These benefits comport with Plaintiffs' stated policy goals of maintaining the efficiency of the judicial system and the fairness of the discovery process.

Ford must again point out Plaintiffs' gross mischaracterization of the scope of the protective orders previously proposed by Ford but rejected by Plaintiffs. Only a small number of documents need to be subject to non-sharing protection, while the majority of documents produced by Ford can be shared among litigants if a sharing provision were included in the ultimate protective order. Denoting such a negligible amount of documents as non-sharing while producing the majority of the documents under sharing protection or no protection at all properly balances Plaintiffs' need for this information *in this case* against Ford's need to restrict access to its commercially sensitive information. Because non-sharing protection comports with the policy of the Western District, encourages testimony in discovery proceedings, and promotes settlement, this Court should grant Ford's Motion for Protective Order and enter the modified version of this Court's standard protective order. In the alternative, Ford does not object to the Court entering the original sharing/non-sharing order it proposed and/or including a reasonable sharing provision in the order ultimately entered.

### B. Ford's Proposed Protective Order Allows All Parties to Fully Comply With All Ethical Obligations Owed to Clients.

Plaintiffs argue that attorneys are ethically obligated to fully maintain their clients' files after a case concludes. This argument lacks legal or factual support. There is no rule in the Texas Disciplinary Rules or the Model Rules of Professional Conduct requiring attorneys to maintain client files at the conclusion of the case. Tex. Ctr. For Legal Ethics, Op. 627 (Apr. 2013) ("[T]he Texas Disciplinary Rules . . . do not specifically set out requirements or prohibitions with respect to the stored files relating to a lawyer's past representation of clients.").

Further, counsel for the Plaintiffs do not cite a single rule to support their contention that they are ethically obligated to fully maintain every document in their clients' files at the conclusion of a case, particularly every document produced by a party. Such a proposition is inefficient and cost prohibitive. Rather, the more appropriate way to handle this would be for Plaintiffs' counsel to maintain some type of list if they so choose. Therefore, Ford's proposed protective order does not violate Plaintiffs' attorneys' obligations to their clients, as no such rule exists.

## CONCLUSION

Plaintiffs summarily rejected all three of Ford's proposed protective orders because they are unwilling to consider a non-sharing provision, despite the fact two of these proposals contained sharing provisions as well. Rather than attempting further negotiations, Plaintiffs proposed the *Vetrano* Order to the court without conferring with Ford, even though Ford was not a party to the *Vetrano* action. In objecting to the entry of the *Vetrano* Order, Ford said it would fully brief a Motion for Protective Order, which it timely filed on August 31, 2016.

Ford requests a protective order that adequately protects the proprietary, trade secret, and commercially sensitive information that it is producing in response to discovery in this case. Ford has in good faith identified certain documents containing such highly proprietary and/or trade secret information that they should be subject to non-sharing protection. Ford will continue to work in good faith should other documents require a non-sharing designation. Good cause exists to protect these documents from public dissemination, and therefore, a non-sharing protective order is appropriate. This Court recognizes the benefits of non-sharing protection, demonstrated by the existence of a non-sharing provision in its standing protective order. Therefore, Ford requests that this Court enter the modified Western District Form Protective

Order proposed by Ford. In the alternative, Ford requests that the Court consider Ford's original sharing/non-sharing proposed order as well.

WHEREFORE, PREMISES CONSIDERED, Ford respectfully requests that this Court enter its proposed protective order previously approved in the Local Rules of the Western District of Texas with slight modification, and deny Plaintiffs' request for entry of the unrelated *Vetrano* protective order.

Respectfully submitted,

BROCK PERSON GUERRA REYNA, P.C.
17339 Redland Road
San Antonio, Texas  78247
(210) 979-0100
(210) 979-7810 (FAX)

BY: _____
RICARDO R. REYNA
State Bar No. 16794845
Email: rreyna@bpgrlaw.com
GREG R. HOKENSON
State Bar No. 24036794
Email: ghokenson@bpgrlaw.com
17339 Redland Road
San Antonio, Texas  78247
(210) 979-0100
(210) 979-7810 (FAX)

ATTORNEYS FOR DEFENDANT,
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of September, 2016, the foregoing document was served sending copies via facsimile to the following:

Michael R. De La Paz
Law Office of Michael R. De La Paz
601 Howard Street, 2nd Floor
San Antonio, Texas 78212
and
Kip Whittemore
Wolff Ardis, P.C.
5810 Shelby Oaks Drive
Memphis, Tennessee 38134-7315
*Attorney for Plaintiffs*

Mark J. Barrera
DYKEMA COX SMITH
112 East Pecan, Suite 1800
San Antonio, Texas 78205
*Attorneys for Defendant,*
**Key Safety Restraint Systems, Inc.,**
*a/k/a* **Key Safety Systems, Inc.,** *and*
*f/k/a* **Breed Technologies, Inc.,**

RICARDO R. REYNA
GREG R. HOKENSON